FILED
CLERK

2:18 pm, Jul 17, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SUFFOLK COUNTY POLICE BENEVOLENT
ASSOCIATION, and NOEL DIGEROLAMO, as
President of the SUFFOLK COUNTY POLICE
BENEVOLENT ASSOCIATION,

                                              Plaintiffs,        **MEMORANDUM & ORDER**
                                                                    22-cv-05803 (JMA) (LGD)

        -against-

ROBERT TROTTA, as Legislator for the
COUNTY OF SUFFOLK individually and in
his official capacity,
                                              Defendant.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**[1]

     Before the Court is Plaintiff Suffolk County Police Benevolent Association and Plaintiff Noel DeGerolamo's ("Plaintiffs") motion to dismiss Defendant Robert Trotta's ("Defendant") state-law counterclaim, which alleges violations of New York Civil Rights Law §§ 70-a and 76-a ("Anti-SLAPP Counterclaim"). (See ECF No. 48.)  For the below reasons, Plaintiffs' motion to dismiss Defendant's counterclaim is GRANTED, and Defendant's counterclaim is DISMISSED without prejudice to its potential refiling in state court.

### I.    BACKGROUND[2]

**A.   Factual Background**

     On May 6, 2021, Defendant, Suffolk County Legislator Robert Trotta, requested a determination from the Suffolk County Board of Ethics ("SCBOE") whether the district attorney

---

[1]    Jonathan M. Hyman, a rising second-year student at the New York University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

[2]    This Opinion draws its facts from Plaintiffs' Complaint (ECF No. 1 ("Compl.")), the well-pleaded allegations of which are taken as true for purposes of this Opinion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  For ease of reference, the Court refers to Plaintiffs' Memorandum of Law in Support of their Motion to Dismiss for Lack of Jurisdiction Over Counterclaims as "Pls.' Mot." (ECF No. 48) and Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss for Lack of Jurisdiction Over Counterclaims as "Def. Mot." (ECF No. 49).

could accept political contributions from the Suffolk County Police Benevolent Association ("PBA") or its political action committee. (ECF No. 1, ¶ 34 ("Compl.").) The SCBOE at first decided that issuing an advisory opinion on such a question was outside its "standing." (Id. at ¶ 35.) But on September 15, 2021, Defendant requested that the SCBOE reconsider whether it could issue an advisory opinion. (Id. at ¶ 38.) Shortly thereafter, at Defendant's behest, the SCBOE conducted a legal analysis, reconsidered the issue, and determined that it did, in fact, have standing to issue an advisory opinion. (Id. at ¶¶ 38, 39, 41.)

The advisory opinion stipulates that it does not make a formal determination of whether contributions from the PBA's political action committee violate New York Election Law § 14-116 and the Suffolk County Code of Ethics. (Id. at ¶¶ 42, 48.) It also acknowledges that there is no explicit prohibition on unions like the PBA contributing as long as they comply with monetary caps and reporting requirements. (Id. at ¶ 45.) The opinion notes, however, that a "prosecuting attorney"—such as the district attorney—accepting campaign contributions from a police union is "improper" given the district attorney's role in prosecuting police misconduct. (Id. at ¶¶ 49, 51, 55.)

Defendant's inquiry was also referred to several other government agencies, including the Office of the New York State Attorney General, the Internal Revenue Service, the Office of the Suffolk County District Attorney, the New York State Comptroller, and the New York State Department of Taxation and Finance. (Id. at ¶ 36.) At the time of Plaintiff's complaint, none of these agencies had taken any action regarding the referral. (Id. at ¶ 37.)

On July 15, 2022, Plaintiffs attempted to contribute $5,000 to the district attorney's authorized candidate committee. (Id. at ¶ 63.) Shortly thereafter, however, the district attorney's campaign returned the check to Plaintiffs, notifying them that the office was abiding by the SCBOE's advisory opinion. (Id. at ¶¶ 66–67.)

2

B.  **Procedural History**

Plaintiffs commenced this action by filing a complaint on September 28, 2022 against Defendant Trotta and then-Defendants the County of Suffolk, the Suffolk County Board of Ethics, and Eric A. Kopp, then-chair of the SCBOE. (See Compl.)  The complaint alleges that by preventing the PBA from donating to political candidates, Defendant sought to abridge Plaintiff's freedoms under the First Amendment to the United States Constitution, (id. at ¶¶ 103–08), the Fourteenth Amendment to the United States Constitution, (id. at ¶¶ 165–66), and the New York State Constitution, (id. at ¶¶ 112–16).  Plaintiffs also allege that Defendant sought to usurp New York state election law, (id. at ¶¶ 117–131), and the Suffolk County Code, (id. at ¶ 145).  Plaintiffs sought compensatory and punitive damages and declaratory relief to declare the SCBOA's advisory opinion unlawful.  (Id. at ¶¶ 5–6.)

On December 19, 2022, Defendant Trotta counterclaimed alleging violations of New York Civil Rights Law § 76-a.  (See ECF No. 27 ("Counterclaim").)  The Anti-SLAPP Counterclaim alleges that Plaintiffs initiated their lawsuit to intimidate Defendant.  (Id. at ¶¶ 43–44.)  As a result, Defendant seeks compensatory damages, punitive damages, attorney's fees, and costs under New York Civ. Rights Law § 70-a.  (Id.)

On March 29, 2023, the parties entered into a voluntary stipulation of dismissal with regard to Defendant Kopp.  (ECF No. 36.)  The Court issued an order effectuating the stipulation with prejudice on March 29, 2023.  (Elec. Order dated Mar. 29, 2023.)  Subsequently, on July 19, 2023, the parties entered into a voluntary stipulation of dismissal with prejudice as to all defendants except Defendant Trotta.  (ECF No. 41.)  The Court effectuated the stipulation on July 20, 2023.  (Elec. Order dated Jul. 20, 2023.)  On October 27, 2023, the Court filed an electronic order directing the parties to apply to dismiss the remaining causes of action against Defendant with prejudice.  (Elec. Order dated Oct. 27, 2023.)  In that Order, the Court also directed the parties to

3

supplement their positions on "whether this case may remain before the … Court for the limited purpose of adjudicating remedies available to Defendant Robert Trotta under New York's anti-SLAPP legislation." (Id.)

On November 28, 2023, the parties entered into a voluntary stipulation of dismissal with prejudice regarding Plaintiffs' claims against Defendant Trotta. (ECF No. 47.) That same day, in accordance with the Court's October 27 Order, Plaintiffs moved to dismiss Defendant's Anti-SLAPP Counterclaim for lack of subject matter jurisdiction. (ECF No. 48 ("Pls.' Mot.").) Therein, Plaintiffs argue that the Court should not exercise supplemental jurisdiction over Defendant's Anti-SLAPP Counterclaim. (Id. at 2.) Defendant timely opposed Plaintiffs' motion, arguing the Anti-SLAPP Counterclaim should remain in federal court because his counsel intends to seek attorneys' and costs fees under 42 U.S.C. § 1988(b). (ECF No. 49 ("Def. Mot.").)

## II.   DISCUSSION

### A.   Supplemental Jurisdiction Under 28 U.S.C. § 1367

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see generally Montefiore Med. Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 332 (2d Cir. 2011). To be related, the "federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" Montefiore Med. Ctr., 642 F.3d at 332 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).

That said, supplemental jurisdiction is not mandatory, and courts should, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c).

4

These circumstances include instances where "the claim raises a novel or complex issue of State law," id. § 1367(c)(1); "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," id. § 1367(c)(2); "the district court has dismissed all claims over which it has original jurisdiction," id. § 1367(c)(3); or "exceptional circumstances" exist such that "there are other compelling reasons for declining jurisdiction," id. § 1367(c)(4). Should a court find that any of these categories is implicated, it must "balance the values of judicial economy, convenience, fairness, and comity"—the "Cohill factors"—in determining whether to exercise jurisdiction. Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). In weighing these values, courts look to "the circumstances of [each] particular case." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997). In general, though, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of Am., 383 U.S. at 726. Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998)). In the end, the decision whether to exercise supplemental jurisdiction is entirely within the court's "discretion[ ] and [is] not a litigant's right." Klein & Co. Futures, Inc., 464 F.3d at 263.

**B.      Recovery of Fees Under 42 U.S.C. § 1988**

Title 42 U.S.C. § 1988 provides that, in certain federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[3] 42 U.S.C. § 1988. While prevailing plaintiffs will often recover fees, courts

---

[3] When a claim is voluntarily dismissed with prejudice, defendants can be considered prevailing parties eligible for fee-shifting under Section 1988 so long as there is a "material alteration of the legal relationship of the parties." See Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 165–66 (2d. Cir. 2014) (quoting Buckhannon Bd. & Care Home

5

are more cautious about awarding such fees to defendants. See Panetta v. Crowley, 460 F.3d 388, 399 (2d Cir. 2006). Indeed, "[a] prevailing defendant should not be awarded fees unless a court finds that the plaintiff's claim was 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.'" Nicholas v. Harder, 637 F. App'x 51, 52 (2d Cir. 2016) (quoting Panetta, 460 F.3d at 399). A claim is frivolous when it lacks an arguable basis either "in law or in fact." Alvarez v. Garland, 33 F.4th 626, 637 (2d Cir. 2022).

But Section 1988 provides neither an independent cause of action nor "a basis for jurisdiction." Cano v. City of N.Y., No. 23-cv-3807 (LTS), 2023 WL 4134341, at *3 (S.D.N.Y. June 20, 2023) (rejecting a Section 1988 claim as a basis for exercising supplemental jurisdiction over a state-law claim); see also Baltas v. Bowers, No. 23-cv-0764 (VAB), 2023 WL 4684650, at *7 (D. Conn. Jul. 21, 2023) (dismissing a claim asserted under Section 1988 because the statute "does not provide an independent cause of action") (quoting Moor v. Alameda Cty., 411 U.S. 693, 702–06 (1973) ("[W]e do not believe that [§ 1988], without more, was meant to authorize the wholesale importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights.")). "Rather, it is a law that provides for awards of reasonable attorney's fees in certain cases." Id. Accordingly, while a court can exercise supplemental jurisdiction over a state-law counterclaim under 42 U.S.C. § 1983 (a contention neither Plaintiff nor Defendant denies), invoking Section 1988 does not by itself confer independent subject matter jurisdiction on this Court.

**C.    Analysis**

Plaintiffs ask the Court to decline to exercise supplemental jurisdiction over the remaining Anti-SLAPP Counterclaim for two reasons. First, Plaintiffs maintain that supplemental

---

v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 604 (2001)). Dismissal of a cause of action with prejudice suffices as a material alteration. See id.

6

jurisdiction cannot exist over the Anti-SLAPP Counterclaim because it does not arise from the same common nucleus of operative fact as do the claims Plaintiffs raised in their complaint. (See Pls.' Mot. at 3.) In the alternative, Plaintiffs entreat the Court to, in its discretion, decline to exercise supplemental jurisdiction over Defendant's Anti-SLAPP Counterclaim under 28 U.S.C. § 1367(c). (See id. at 3–5.) The Court assumes, without deciding, that Defendant's Anti-SLAPP Counterclaim falls within the Court's supplemental jurisdiction under 28 U.S.C. §1367(a). Thus, the operative question is whether the Court should otherwise decline to exercise supplemental jurisdiction under 28 U.S.C. §1367(c). See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) ("[W]here section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c).").

      **1.**     **Plaintiffs Demonstrate that Declination of Jurisdiction Is Appropriate Under 28 U.S.C. § 1367(c).**

Plaintiffs argue that two of the enumerated categories of subsection 1367(c) apply. First, they argue that subsection 1367(c)(1) applies because Defendant's Anti-SLAPP Counterclaim "raises a novel or complex issue of State law."[4] (Pls.' Mot. at 4.) Second, Plaintiffs argue that subsection 1367(c)(3) applies because "the district court has dismissed all claims over which it has original jurisdiction." (Id. at 2–3.) Plaintiffs then argue—because two enumerated categories of subsection 1367(c) apply—that exercising supplemental jurisdiction would not "promote [judicial] economy, convenience, fairness, and comity." (Id. at 3.)

Defendant offers two arguments in response. First, Defendant appears to argue that subsection 1367(c)(3) does not apply here. (See Def. Mot. at 4.) In Defendant's view, "a federal question"—i.e., whether Defendant is entitled to attorney's fees as a prevailing party under Section

---

[4] As discussed further below, Defendant does not appear to dispute Plaintiffs' contention that subsection 1367(c)(1) applies. (See generally Def. Mot. at 4.)

7

1988(b)—"will remain in controversy" even if the Court declines to exercise supplemental jurisdiction. (Id. at 4.) Second, Defendant argues that "judicial economy, convenience, fairness, and comity" considerations militate in favor of exercising supplemental jurisdiction over the Anti-SLAPP Counterclaim. (Def. Mot. at 4–5.)

Plaintiffs have the better argument for two reasons. First, Plaintiffs have met their burden to establish that the statutory exemptions of 28 U.S.C. § 1367(c)(1) and (3) apply. Second, exercising supplemental jurisdiction over Defendant's counterclaim would violate interests of judicial economy, convenience, fairness, and comity. Accordingly, for the below reasons, the Court will decline to retain supplemental jurisdiction over Defendant's Anti-SLAPP Counterclaim and will dismiss it without prejudice to its potential refiling in state court.

    a)  *Subsections 1367(c)(1) and 1367(c)(3) Apply.*

Defendant does not dispute Plaintiffs' contention that the Anti-SLAPP Counterclaim "raises a novel or complex issue of State law" under 28 U.S.C. § 1367(c)(1). (Compare Pls.' Mot. at 4, with Def. Mot. at 4.) And for good reason. Litigation of claims arising under New York's anti-SLAPP legislation would require this Court to delve into its novel and complex application, including derogation of New York common law principles and the determination of actual malice.[5] Additionally, courts in the Second Circuit conflict as to whether Section 70-a New York's anti-SLAPP statute even applies in federal court; some courts have taken the view that its pleading standards conflict with those in the Federal Rules of Civil Procedure. Compare Nat'l Acad. of TV

---

[5] New York's anti-SLAPP ("strategic lawsuits against public participation") statutes provide several procedural and substantive mechanisms for defendants in cases with no substantial basis in law about an issue of public interest. See N.Y. Civ. Rights Law §§ 70-a and 76-a. SLAPP suits are those intended to chill a defendant's exercise of free speech, and in 2020, New York's Legislature amended the state's anti-SLAPP statutes to broaden rights for defendants facing defamation. See Carol v. Trump, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). The amended laws require, inter alia, the dismissal of a covered complaint or counterclaim unless the plaintiff demonstrates a "substantial basis in law", N.Y. CPLR 3211(g), subd. 1., and "[r]equire[] a court to award costs and fees in any covered actions in which the defendant demonstrates that such a substantial basis in law and fact was lacking." Trump, 590 F. Supp. 3d at 581 (quoting N.Y. Civ. Rts. L. § 70-a, subd. 1(a)).

Arts & Scis., Inc. v. Multimedia Sys. Design, Inc., 551 F. Supp. 3d 408, 431 (S.D.N.Y. 2021) (finding that pleading standards in N.Y. Civ. Rts. L. §70-a conflict with FRCP 12(b)(6)), and Prince v. Intercept, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022) (same), with Goldman v. Reddington, No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (holding that an anti-SLAPP counterclaim does not necessarily conflict with the Federal Rules of Civil Procedure). Considering the foregoing, the Court concludes that the statutory exemption under 28 U.S.C. § 1367(c)(1) clearly applies under these facts. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 124 (2d Cir. 2006) ("We have repeatedly held that a district particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims.").

The parties do appear to dispute, however, that "the district court has dismissed all claims over which it has original jurisdiction" under 28 U.S.C. § 1367(c)(3). (Compare Pls.' Mot. at 2, with Def. Mot. at 4.) For their part, Plaintiffs contend the statutory exemption of § 1367(c)(3) applies because every federal claim brought against Defendant was voluntarily dismissed with prejudice. (See Pls.' Mot. at 4; see also Elec. Order dated Nov. 19, 2023.) Defendant counters that the availability of "cognizable remedies under 42 U.S.C. § 1988(b) as a 'prevailing party' in the action" is a "federal question [that] remain[s] in controversy." (Def. Mot. 4.) Not so. Defendant's request for attorney's fees under Section 1988(b) is not a cause of action that can independently support supplemental jurisdiction over a state-law counterclaim. See Cano, 2023 WL 4134341, at *3. Rather, Section 1988 "is a law that provides for awards of reasonable attorney's fees in certain [federal civil rights] cases." Id. Thus, the Court concludes that the statutory exemption of 28 U.S.C. § 1367(c)(3) applies as well.

b) *Judicial Economy, Convenience, Fairness, and Comity Considerations Support Declining Supplemental Jurisdiction.*

Having found that 28 U.S.C. §§ 1367(c)(1) and (3) apply to the facts at hand, the Court considers "the familiar factors of judicial economy, convenience, fairness[,] and comity." Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 81 (2d Cir. 2018). In doing so, the Court finds the factors taken together weigh decidedly against the Court exercising supplemental jurisdiction, and in favor of the resolution of the Anti-SLAPP Counterclaim by the appropriate state court.

Beginning with judicial economy, the Court "consider[s] [its] familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation." Chenensky v. N.Y. Life Ins., 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citing Allard v. Arthur Andersen & Co., 957 F. Supp. 409, 425 (S.D.N.Y. 1997)). After considering the parties' arguments, the Court finds that considerations of judicial economy weigh in favor of declining supplemental jurisdiction. Defendant argues, and the Court disagrees, that "[j]udicial economy weighs strongly in favor of remaining in federal court … because that is where Mr. Trotta's entitlement to § 1988(b) fees will be appropriately heard." (Def. Mot. at 5.)

Reasons abound. For one, litigation over the lingering state-law counterclaim remains at an early stage, and the Court has expended few judicial resources to reach the merits of Defendant's Anti-SLAPP Counterclaim at large. Moreover, this Court finds no reason Defendant could not seek damages in state court for damages associated with litigating the now-dismissed federal claims. In fact, New York's Anti-SLAPP statute specifically creates a cause of action to recover "damages including costs and attorney's fees" if the original lawsuit lacked a basis in fact. N.Y. Civ. Rights Law §§ 70-a; see also Max v. Lissner, No. 22-cv-5070 (VEC), 2023 WL 2346365, at *8–9 (S.D.N.Y. Mar. 3, 2023) (finding that, although insufficiently pled, a plaintiff can bring a substantive cause of action under New York's Anti-SLAPP statute). It follows that the Court's decision to decline supplemental jurisdiction over the Anti-SLAPP Counterclaim need

10

not—as Defendant contends—"fractur[e] the case into two pieces—litigati[on of] the state claim in state court and [litigation of] the federal remedy in federal court." (Def. Mot. at 5.) Thus, the Court rejects Defendant's argument that judicial economy favors the case remaining in federal court. See Valencia v. Sung M. Lee, 316 F.3d 299, 306 (2d Cir. 2003) (holding that a district court exercising supplemental jurisdiction at an early stage was an abuse of discretion); McKoy v. Trump Corp., No. 18-cv-9936 (LGS), 2024 WL 233936, at *2 (S.D.N.Y. Jan. 11, 2024) (denying supplemental jurisdiction because "the parties' pre-trial submissions must be filed and decided, a final pre-trial conference must be held and a trial date rescheduled"); Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 453 n.63 (S.D.N.Y. 2007) ("[A]t early stages in the proceedings, ... little is to be gained by way of judicial economy from retaining jurisdiction.").

Relatedly, the Anti-SLAPP Counterclaim is not "easily resolvable," such that it would be more convenient for this Court to "resolve the case than decline to exercise jurisdiction." UBS Secs. LLC v. Dondero, No. 23-cv-1965 (KPF), 2023 WL 8472322, at *8 (S.D.N.Y. Dec. 7, 2023). As Plaintiffs acknowledge, the Anti-SLAPP Counterclaim would require this Court to "wade into unsettled issues of state law" after intense motion practice. (Pls.' Mot. at 4.) Given the novelty and the complexity of New York's anti-SLAPP legislation, it follows that resolution of the Anti-SLAPP Counterclaim should be entrusted to a court that is an expositor of New York law.

Defendant argues, and the Court disagrees again, that "[c]onvenience weighs in favor of remaining in federal court because the issues to be litigated under Mr. Trotta's state-law claim mirror the issues to be decided under § 1988(b)—namely, the extent to which attorney fees should be paid as a remedy for malicious and frivolous litigation." (Def. Mot. at 5.) As explained above, Defendant's view of his entitlement to attorney's fees under Section 1988(b) is misguided. Any convenience consideration revolving around Defendant having to "brief those issues twice" is unfounded, as this case need not be "fractur[ed]" into "a federal 1988(b) component and a state

11

anti-SLAPP component." (Id.) Put differently, the Court believes that the appropriate state court can effectively and efficiently resolve the entirety of Defendant's claims for relief.

Fairness, the next factor, "involves questions of equity: Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?" Chenensky v. N.Y. Life Ins., 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citing Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994)). Given that litigation over Defendant's counterclaim is still nascent, "refiling in state court will present only a minor inconvenience to the parties." Corley v. Vance, 365 F. Supp. 3d 407, 462 (S.D.N.Y. 2019). The Court sees no reason why Plaintiffs or Defendant would be unduly prejudiced by having to litigate the Anti-SLAPP Counterclaim in the appropriate New York state court.

Finally, comity "takes into account such factors as the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." Chenensky, 942 F. Supp. 2d at 392 (alteration adopted) (quoting Int'l Coll. of Surgeons, 522 U.S. at 173). At a more fundamental level, comity "reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." Levin v. Com. Energy Inc., 560 U.S. 413, 421 (2010) (internal quotation marks and citation omitted). The Court finds this factor also weighs in favor of declining supplemental jurisdiction. Defendant's counterclaim raises a novel question of state law, and the Second Circuit has held repeatedly that, when all federal claims have been dismissed, "comity counsels strongly against the exercise of supplemental jurisdiction." Norton v. Town of Brookhaven, No. 22-1015-CV, 2023 WL 3477123, at *4 (2d Cir. May 16, 2023); see Kolari, 455 F.3d at 124 ("We have repeatedly held that a district

court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims.")

Defendant acknowledges that "the comity factor will ordinarily favor a state court making … pronouncements about state statutes" but nonetheless argues that comity "flows in the other direction" when a state court pronounces entitlement to attorney's fees under federal law. (Def. Mot. at 5.) That may be, but the Court sees no reason why an anti-SLAPP claim for malicious prosecution brought in state court could not adequately compensate Defendant for the alleged damages inflicted by Plaintiffs—a result which would avoid contradictory rulings from state and federal courts. Against that backdrop, the Court is hesitant to wade into unsettled issues of state law, and for that reason, comity weighs strongly in favor of declining to exercise supplemental jurisdiction.

Ultimately, and as noted above, "insofar as a § 1367(c) category is applicable, supplemental jurisdiction is a 'doctrine of discretion, not of plaintiffs' right.'" Catzin, 899 F.3d at 85 (quoting Kolari, 455 F.3d at 122). For the reasons just detailed, an exercise of such discretion is appropriate here, as the Court finds that, in the aggregate, the familiar factors of judicial economy, convenience, fairness, and comity weigh strongly in favor of declining supplemental jurisdiction over Defendant's Anti-SLAPP Counterclaim.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion to dismiss Defendant's state-law counterclaim (ECF No. 48). Defendant's counterclaim is DISMISSED without prejudice to its potential refiling in state court. The Clerk of Court is respectfully directed to close ECF No. 48.

**SO ORDERED.**

Dated:  July 17, 2024
Central Islip, New York

/s/   (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
